IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SUSAN L. LANGDON, )
)
Plaintiff, )
)
v. ) 2:13cv635
) **Electronic Filing**
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security, )
)
Defendant. )

## MEMORANDUM OPINION

September 17, 2014

**I.     INTRODUCTION**

Plaintiff, Susan L. Langdon ("Langdon" or "Plaintiff"), commenced this action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-434, & 1381-1383f. Plaintiff protectively filed an application for DIB and SSI on July 14, 2009, alleging disability from August 12, 2008, due to chronic back pain and bipolar disorder. R. 219-227, 267. The applications were initially denied on November 30, 2009, and Plaintiff timely requested a hearing. R. 120, 147-149.

A hearing was held on November 18, 2011, before Administrative Law Judge, David H. Brash (the "ALJ"), and a Vocational Expert ("VE"). R. 41-87. Plaintiff, who was represented by counsel, appeared and gave testimony. *Id.* The ALJ issued a written decision on December 6, 2011, finding that Plaintiff was not disabled under the Act. R. 22-35. Plaintiff timely requested a

review of the ALJ's decision to the Appeals Council, which was denied on March 8, 2013, making the ALJ's decision the final decision for judicial review pursuant to 42 U.S.C. § 405. R. 1-4. Plaintiff subsequently filed his appeal with this Court.

The record was developed fully at the administrative level and the parties have filed cross motions for summary judgment. For the reasons set forth below, Plaintiff's motion for summary judgment will be denied, the Commissioner's motion for summary judgment will be granted and final judgment will be entered against Plaintiff and in favor of the Commissioner.

## II. STATEMENT OF THE CASE

Plaintiff was 32 years of age on her alleged on-set date of disability. R. 35. She had a GED and attended Mercer County Vocational-Technical School for business management, which she completed in 1993. R. 48, 273. Plaintiff's past relevant work experience included work as a waitress/cook and as a home attendant. R. 78-79, 268, 605. As a home attendant, Plaintiff cared for an elderly man with no legs. R. 72-73. Though Plaintiff alleged disability as of August of 2008, she continued to work as a home attendant for two (2) years until the elderly man died in 2010. R. 73. Plaintiff did not get paid as a home attendant, but instead received room and board. R. 73, 605.

In March of 2008, Plaintiff was treated for an alcohol overdose and statements of suicidality. R. 529-533. Plaintiff reported that she typically consumed twelve (12) to twenty-four (24) alcoholic drinks in a twenty-four (24) hour period. R. 530-531. In April of 2008, Plaintiff reported that she used crack cocaine daily, used methadone once a week, huffed whippets and snorted Soma. R. 348.

Plaintiff was involved in a motor vehicle accident in August of 2008, in which she sustained contusions of her shoulder and elbow, a cervical sprain and cephalgia (headache). R. 356, 358. Plaintiff followed-up treatment with her primary care physicians, and she was prescribed Naprosyn and Flexeril and physical therapy. R. 391, 395. Plaintiff was diagnosed with status post motor vehicle accident back pain with right-side radiculopathy by Curtis Jantzi, D.O. ("Dr. Jantzi"). R. 408-409.

In November 2008, Plaintiff was treated for an intentional drug overdose and underwent a drug test for phencyclidine ("PCP"). R. 551-553, 559, 565. Plaintiff tested positive for PCP and THC (marijuana). R. 563. Plaintiff again tested positive for THC in March of 2009. R. 522.

Plaintiff began treatment with James Liszewski, M.D. ("Dr. Liszewski") in April of 2009, and he diagnosed her with chronic neck and back pain due to a chronic sprain. R. 698. In June of 2009, Plaintiff reported mood swings and feeling depressed and suicidal, and Dr. Liszewski referred her to Sharon Regional Hospital for mental health treatment. R. 695. In a follow-up examination, Dr. Liszewski noted that Plaintiff's mental symptoms improved. R. 693. In September of 2009, Plaintiff passed out while driving ran off the road and suffered facial contusions. R. 915. Plaintiff's drug screen was positive for benzodiazepine, THC and opiates. R. 915.

On June 16, 2009, Plaintiff was voluntarily admitted to the adult psychiatric unit of Sharon Regional Health System for increasing depression and anxiety, including suicidal and homicidal ideation toward an ex-boyfriend. R. 599-614. Plaintiff admitted to occasional alcohol use, but denied drug use. R 605. Plaintiff's urine drug screen, however, was positive for cannabinoids. R. 605, 621. Plaintiff was discharged three (3) days later, at her request, with a

diagnosis of bipolar disorder, not otherwise specified ("NOS"), post-traumatic stress disorder ("PTSD"); cannabis abuse; and personality disorder. R. 600.

On November 4, 2009, Robert P. Craig, Ph.D. ("Dr. Craig"), performed a consultative psychological evaluation of Plaintiff at the request of the State agency. R. 729-736. Dr. Craig observed that Plaintiff's attention, concentration, motivation, and self-sufficiency were all good. R. 733. Plaintiff reported a history of anxiety and panic attacks, and claimed that she was "fairly clean" from drugs and alcohol. *Id.* Plaintiff reported that she was anxious around people because of her history of abuse and being worried about her safety. R. 734. Plaintiff further stated that she cooked and cleaned around the house, could handle money, that she could perform most daily living tasks, but she did not do much socially with others, and she had poor concentration, persistence, and pace. R. 735.

Dr. Craig diagnosed Plaintiff with PTSD, dysthymia, and alcohol abuse in partial or full remission. *Id.* In an attached functional assessment, Dr. Craig opined that Plaintiff's ability to understand, remember, and carry out instructions, as well as her ability to respond appropriately to supervision, coworkers, and work pressures were all fair and not affected by her mental impairments. R. 729.

On November 25, 2009, Emanuel Schnepp, Ph.D. ("Dr. Schnepp"), a State agency psychological consultant concluded that none of Plaintiff's mental impairments were disabling. R. 745-758. Dr. Schnepp opined that Plaintiff could make simple decisions and carry out short and simple instructions. R. 743. He also noted that although Plaintiff was socially isolated and had a history of panic attacks, she could maintain socially appropriate behavior, was self-sufficient, and could sustain an ordinary routine without special supervision. *Id.* Dr. Schnepp

concluded that Plaintiff's limitations did not preclude her from performing the basic mental demands of competitive work on a sustained basis. *Id.*

Martin Meyer, Ph.D. ("Dr. Meyer"), and Julie Uran, Ph.D. ("Dr. Uran"), performed a psychological evaluation of Plaintiff in May of 2010. R. 891-903. Plaintiff told the doctors that she was unable to work because of physical limitations involving standing and lifting, as well as lability in mood including displays of anger. R. 895. Drs. Meyer and Uran administered an IQ test on Plaintiff which resulted in a verbal IQ score of 77, a performance IQ score of 69, and a full-scale IQ score of 71. R. 893. They assessed Plaintiff as below-average intelligence. R. 895. They noted, however, that Plaintiff's academic abilities exceeded expectations . R. 893.

Drs. Meyer and Uran opined that Plaintiff's vocational potentials were at the skilled and semi-skilled levels. R. 895. They concluded, nevertheless, that Plaintiff could not function within a competitive job environment because of her overwhelming depression and poor coping skills, as well as her overall unstable functioning. *Id.* The doctors diagnosed Plaintiff with bipolar disorder by history, generalized anxiety disorder, nicotine dependence, PTSD, borderline intellectual functioning, and borderline personality disorder. R. 896.

In September 2010, Plaintiff began treating with Iftikhar Chatha, M.D. ("Dr. Chatha") for various complaints, including back pain. R. 772, 776, 779. Though Plaintiff complained of local discomfort in her thoracic spine, Dr. Chatha found Plaintiff had normal musculoskeletal, extremity and neurological physical examinations, including full range of motion of all joints and normal sensation, reflexes, coordination, and muscle strength and tone. R. 774, 779-780. Dr. Chatha also noted Plaintiff's psychological findings were normal. R. 774, 780. In November of 2010, Plaintiff asked Dr. Chatha to complete paperwork for her Social Security disability claim

in which he noted that Plaintiff's musculoskeletal, extremity, neurological and psychological examination findings were normal. R. 764-766.

In October 2010, Plaintiff began treatment with Psychiatrist Harshad C. Patel, M.D. ("Dr. Patel"). R. 786. At the initial assessment on October 4, 2010, Plaintiff complained of depression, anxiety, anger, mood swings, and a history of trauma due to past abuse. *Id.* Plaintiff stated that she considered herself an alcoholic and that she used THC daily. R. 787. On the mental status examination, Dr. Patel found Plaintiff's mood and affect were depressed; her thought process was logical and coherent; no psychosis was noted; her cognitive functioning was between low and normal; and her insight was limited. R. 788. Plaintiff denied any current suicidal or homicidal ideation. *Id.*

The examining therapist diagnosed Plaintiff with PTSD, bipolar disorder, and borderline personality disorder. *Id.* Plaintiff's current Global Assessment of Functioning (GAF) score was assessed at between 55 and 60, with her highest GAF score in the past year at 65 and her lowest GAF score at 40.[1] *Id.* On November 11, 2010, after seeing Plaintiff on one occasion, Dr. Patel completed a questionnaire indicating that Plaintiff's mental impairments met the required severity to meet Listings 12.04 (Affective Disorders) and 12.06 (Anxiety-Related Disorders)[2]. R. 760-763. Dr. Patel indicated that Plaintiff had marked difficulties in maintaining social functioning and that she had repeated episodes of decompensation, each of extended duration. R. 760, 763.

---

[1] GAF scores from 51 to 60 correspond to "moderate symptoms" or a "moderate difficulty in social, occupational, or school functioning." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th ed. Text Revision 2000).

[2] The Listing of Impairments (the "Listings"), found at 20 C.F.R. pt. 404, subpt. P, app. 1, describes impairments that are considered "severe enough to prevent an individual from doing any gainful activity." 20 C.F.R. §§ 404.1525(a), 416.925(a).

6

Plaintiff returned to Dr. Chatha on June 22, 2011. R. 965. Plaintiff's physical examination was normal, and no abnormalities were noted in her thoracic or lumbar spine. R. 967. She had full range of motion of all joints and normal sensation, reflexes, coordination, muscle strength and tone. *Id.* Her psychological examination was also normal. *Id.*

The ALJ denied Plaintiff's application for DIB and SSI benefits finding that although Plaintiff's ability to engage in substantial gainful activity is restricted by limitations resulting from several impairments that qualified as severe, including degenerative joint disease, lumbar and cervical strain, asthma/chronic obstructive pulmonary disease, migraines, bipolar disorder, dysthymic disorder, PTSD, generalized anxiety disorder, borderline personality disorder, borderline intellectual functioning, cannabis dependence, and alcohol dependence, Plaintiff retains the residual functional capacity to perform a wide range of light work that will accommodate her need for (1) occasional climbing of ramps and stairs; (2) occasional balancing, stooping, kneeling, crouching, and crawling; (3) no concentrated exposure to vibrations or moderate exposure to gases, fumes, or similar respiratory irritants; and (4) no moderate exposure to unprotected heights, dangerous machinery, or similar hazards.

The ALJ asked the Vocational Expert ("VE") to assume that the hypothetical individual was limited to understanding, remembering and carry out simple instructions; limited to performing simple routine tasks; limited to no work-related contact with the public or coworkers with only occasional supervision, such that the work would be essentially isolated; and limited to a low-stress work environment. R. 79-80. The VE testified that the hypothetical individual could perform several light occupations, each encompassing a significant number of jobs in the national society. R. 81. The VE identified the following occupations housekeeper/cleaner, shirt

presser, and officer helper/clerical. The Appeals Council denied plaintiff's request for review and the instant action followed.

### III. STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of*

8

*Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the

claimant can do his previous work; unless he shows that he cannot, he is
determined not to be disabled. If the claimant survives the fourth stage, the fifth,
and final, step requires the SSA to consider so-called "vocational factors" (the
claimant's age, education, and past work experience), and to determine whether
the claimant is capable of performing other jobs existing in significant numbers in
the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of
> administrative law. That rule is to the effect that a reviewing court, in dealing
> with a determination or judgment which an administrative agency alone is
> authorized to make, must judge the propriety of such action solely by the grounds
> invoked by the agency. If those grounds are inadequate or improper, the court is
> powerless to affirm the administrative action by substituting what it considers to
> be a more adequate or proper basis. To do so would propel the court into the
> domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D. Pa. 2005).

## IV. DISCUSSION

Within the meaning of social security law, a "disability" is defined as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last, for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). To be found disabled, an individual must have a "severe impairment" which precludes the individual from performing previous work or any other "substantial gainful activity which exists in the national economy." 20 C.F.R. § 404.1505. The claimant bears the ultimate burden of proving disability within the meaning of the Act. *See* 42 U.S.C. § 423(d)(5)(A) (providing that "[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner may require"); 20 C.F.R. §§ 404.1512(a), 416.912(a).

1. ALJ's Evaluation of Medical Opinions

Plaintiff contends that the ALJ failed to properly assess the medical evidence of record, specifically the opinions of Dr. Patel, Dr. Meyer and Dr. Uran. Dr. Patel, a treating physician, opined that Plaintiff's mental impairments met the criteria for Listings 12.04 and 12.06. The ALJ accorded his opinion little weight however, noting that "at the same time he was concluding that the claimant met the criteria for two [L]istings, he noted she had a GAF of 60 which is indicative of only moderate symptoms or moderate difficulty in social, occupational, or school functioning." R. 34. The ALJ also commented on Dr. Patel's failure to reference Plaintiff's substance abuse since the age of eleven and her claim she was an alcoholic. *Id.* The ALJ found Dr. Patel's opinion inconsistent with the record as a whole, as well as inconsistent with his own progress notes. In July of 2011, Dr. Patel indicated that Plaintiff was responding well to

11

treatment with neutral affect and no reported deficits in thought process and content, cognition, and memory. R. 34, 970.

Similarly, the ALJ accorded little weight to Dr. Meyer's and Dr. Uran's opinion that Plaintiff was unable to sustain employment because of her mental impairments. R. 34. The ALJ found such opinions inconsistent with the record. *Id.* Moreover, like Dr. Patel, the ALJ found Meyer's and Uran's opinion lacking in support because they did not appear to take into account the full extent of Plaintiff's extensive and ongoing history of polysubstance abuse and how it affected her functioning. R. 32, 34.

The ALJ, on the other hand, gave significant weight to the opinions of Drs. Chatha, Sekas, Schnepp and Craig. Dr. Chatha was Plaintiff's primary care physician who noted on more than one occasion, and as recent as June 2011, that Plaintiff's musculoskeletal, extremity, neurological and psychological examination findings were normal. Dr. Chatha found that Plaintiff had full range of motion of all joints and normal sensation, reflexes, coordination, muscle strength and tone. Gail Sekas, M.D. a State agency medical consultant, prepared a physical residual functional capacity assessment in October 2009, in which she opined that Plaintiff was able to perform light exertional level work with postural and environmental limitations. R. 33.

Dr. Schnepp, a State agency psychological consultant concluded that none of Plaintiff's mental impairments were disabling. R. 745-758. Dr. Schnepp opined that Plaintiff could make simple decisions and carry out short and simple instructions. R. 743. Dr. Schnepp concluded that Plaintiff's limitations did not preclude her from performing the basic mental demands of competitive work on a sustained basis. Dr. Craig also performed a consultative psychological evaluation of Plaintiff at the request of the State agency. After a review of the records and a

structured clinical interview with the Plaintiff, Dr. Craig opined that Plaintiff's ability to understand, remember, and carry out instructions, as well as her ability to respond appropriately to supervision, coworkers, and work pressures were all fair and not affected by her mental impairments. R. 729, 733.

The Court finds that the ALJ's evaluation and weighing of the medical evidence was based upon substantial evidence. Opinions expressed by treating and examining physicians do not inevitably bind the Commissioner on the issue of a claimant's residual functional capacity. *Brown v. Astrue*, 649 F.3d 193, 196, n. 2 (3d Cir. 2011). When conflicting medical assessments are presented, an administrative law judge is usually "free to choose the medical opinion of one doctor over that of another." *Diaz v. Commissioner of Social Security*, 577 F.3d 500, 505 (3d Cir. 2009). Nonetheless, the probative force of any medical opinion can only be judged in relation to the evidentiary record as a whole. *Miller v. Commissioner of Social Security*, 172 F.3d 303, 304 (3d Cir. 1999). The ALJ, after a comprehensive review of the record, found that the opinions of Drs. Patel, Meyer and Uran were inconsistent with the record as a whole and failed to consider Plaintiff's long history of substance abuse. Moreover, Patel did nothing more than check the boxes on a form without any explanation after seeing Plaintiff once. "Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993). This Court, therefore, cannot disagree with the ALJ's assessment.

Further, an assessment prepared by a nonexamining consultant will not normally constitute "substantial evidence" of a claimant's ability to work when it is contradicted by reports submitted by treating and examining sources. *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008); *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).

That is especially true in cases involving claimants afflicted with mental impairments. A mental health professional cannot normally "formulate medical opinions based upon objective findings derived from clinical tests." *Sheehan v. Metropolitan Life Insurance Co.*, 368 F.Supp.2d 228, 255 (S.D.N.Y. 2005). "In contrast to some physical impairments, which can be verified or discounted solely by reference to reports of objective medical tests, mental impairments are generally identified on the basis of a psychiatric professional's interactions with an impaired individual." *Haisley v. Sedgwick Claims Management Services, Inc.*, 776 F.Supp.2d 33, 50 (W.D. Pa. 2011). However, State agent opinions also merit significant consideration. *See* SSR 96-6p, 1996 SSR LEXIS 3 ("Because State agency medical and psychological consultants . . . are experts in the Social Security disability programs, . . . 20 C.F.R. §§ 404.1527(f) and 416.927(f) require [ALJs] . . . to consider their findings of fact about the nature and severity of an individual's impairment(s) . . . ."). *See also Chandler v. Commissioner of Social Security*, 667 F.3d 356, 361 (3d Cir. 2011) (noting that State agency consultant opinions merit significant consideration).

As stated above, Dr. Chatha was Plaintiff's primary care physician, and Drs. Sekas, Schnepp and Craig were State agency consultants whose opinions were consistent with the objective medical findings, as well as the substantial evidence of record. Accordingly, this Court finds no merit to Plaintiff's contention that the ALJ failed to properly assess the medical evidence of record.

    2.    <u>The ALJ's Determination Regarding Listing 12.05C</u>

Plaintiff argues that the ALJ improperly determined that Plaintiff does not meet the requirements of Listing 12.05C. The criteria under 12.05(C) are, in pertinent part, as follows:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially

[*35] manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B. C, or D are satisfied.

. . .

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R., Pt. 404, Subpt. P, App'x 1. The United States Court of Appeals for the Third Circuit has held that in order to "meet the requirements of § 12.05(C) a claimant must i) have a valid verbal, performance or full scale IQ of 60 through 70, ii) have a physical or other mental impairment imposing additional and significant work-related limitations of function, and iii) show that the mental retardation was initially manifested during the developmental period (before age 22)." *Markle v. Barnhart*, 324 F. 3d 182, 187 (3d Cir. 2003).

Plaintiff contends that because she had a performance IQ score of 69 and other severe impairments, she presumptively satisfied the requirements of Listing 12.05C for mental retardation. As is true in regard to any 12.05 listing, however, before demonstrating the specific requirements of Listing 12.05C, a claimant must show proof of a "deficit in adaptive functioning" with an initial onset prior to age 22[3]. *See Gist v. Barnhart*, 67 Fed. Appx. 78, 81 (3d Cir. 2003).

In this instance, Plaintiff had a performance IQ score of 69, however, the ALJ found that Plaintiff failed to meet the introductory paragraph of Listing 12.05 because there was no objective evidence of any intellectual deficits that manifested before the age of 22. R. 26-27.

---

[3] The introductory paragraph of Listing 12.05 defines mental retardation as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., before age 22." See 20 C.F.R., pt. 404, subpt. P, app. 1, § 12.05.

This Court finds the record devoid of any evidence, documentary or otherwise, to establish that Plaintiff had early IQ test results, was placed in special education classes or otherwise suffered from deficits in adaptive functioning prior to the age of 22. Moreover, the evidence of record indicates that Plaintiff had a GED and attended vocational-technical school for business management, which she completed in 1993. R. 48, 273. Where the claimant "failed to prove an onset of 'deficits in adaptive functioning' prior to age 22, her satisfaction of the two specific requirements of Listing 12.05(C) . . . is irrelevant." *Hagans v. Colvin*, 2014 U.S. Dist. LEXIS 76549, 6-7 (E.D. Pa. June 5, 2014) (quoting *Gist v. Barnhart*, 67 Fed. Appx. at 82 n.2).

Accordingly, the Court finds that the ALJ's decision with regard to Listing 12.05C is supported by substantial evidence.

3. <u>Plaintiff's Credibility</u>

Finally, Plaintiff contends that the ALJ did not give sufficient reasons for rejecting Plaintiff's testimony based on her credibility. Pursuant to the regulations, however, the ALJ considered the extent to which Plaintiff's complaints were supported or contradicted by the objective evidence in the record. *See* 20 C.F.R. § 416.929(a). As the fact finder, the ALJ has an obligation to weigh all the facts and evidence of record and may accept or reject any evidence if the ALJ explains the reasons for doing so. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). This includes crediting or discounting a claimant's complaints of pain and/or subjective description of the limitations caused by his or her impairments. *Van Horn v. Schweiker*, 717 F.2d 871, 873 (3d Cir. 1983); *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

The ALJ is permitted to make assessments about and assign weight to the evidence before him, so long as the determinations are appropriately explained and supported by substantial evidence. The ALJ did so here in evaluating the medical evidence and then provided the vocational expert with the appropriate hypotheticals in line with his discretionary

16

interpretation of the evidence. Accordingly, the Court finds substantial evidence to support the ALJ's findings leading to a determination that Plaintiff was not disabled.

V.     CONCLUSION

Based on the foregoing, Defendant's Motion for Summary Judgment will be granted. Plaintiff's Motion for Summary Judgment will be denied. The decision of the ALJ is affirmed. An appropriate Order follows.

s/David Stewart Cercone  
David Stewart Cercone  
United States District Judge

cc:    Terry K. Wheeler, Esquire  
       Colin Callahan, AUSA

       (*Via CM/ECF Electronic Mail*)